## GEORGE ERTEL CO. v. STAHL.

### (Circuit Court of Appeals, Seventh Circuit. January 18, 1895.)

### No. 202.

PATENTS—INFRINGEMENT—PRELIMINARY INJUNCTION.

Pending suit to restrain infringement of a patent, injunction should not be granted, the validity of the patent in suit being assailed, and there never having been any adjudication sustaining it, there being no satisfactory showing of its having received public acquiescence, and its infringement being denied.

Appeal from the Circuit Court of the United States for the Southern District of Illinois.

Suit by one Stahl against the George Ertel Company to enjoin infringement of a patent for an improvement in chicken brooders. From an order allowing an injunction pendente lite, defendant appeals. Reversed.

George H. Knight and Melville Church, for appellant.

L. H. Berger and Sprigg, Anderson & Vandeventer, for appellee.

Before WOODS and JENKINS, Circuit Judges, and BAKER, District Judge.

JENKINS, Circuit Judge. This is a suit brought to restrain the alleged infringement of letters patent No. 215,070, issued May 6, 1879, to Edward S. Renwick, for "improvement in chicken brooders," and of another patent, not here involved. The court below, on the 4th day of August, 1894, issued an injunction pendente lite, restraining the appellant from manufacturing or selling or offering for sale or advertising its "Improved Victor Brooder," declared to infringe the device patented to Renwick. The propriety of the restraint thus imposed is brought before us for review by this appeal. The patent is a combination patent. The leading features of the invention are stated by the patentee to be a warm floor for the chickens to rest upon in place of the cold floor of former devices, and the ventilation of the brooding chamber with warm air, in place of the lack of ventilation in older devices. This result he assumes to accomplish by means of a hot air chamber placed beneath the floor, and wherein the air is heated by artificial means, and is permitted to enter the brooding chamber through the perforated floor forming in whole or in part the bottom of the brooding chamber. In other words, the artificially heated air passes into the chamber in substantially the same manner that heated air is admitted into a room in a house, by means of a register in the floor. The four claims of the patent each embrace the perforated floor in combination with different parts of the device. The alleged infringing device is constructed under and

in conformity with letters patent No. 501,775, issued July 18, 1893, to George Ertel for "brooder." This latter device furnishes warm air to the brooding chamber in the following manner: Fresh air is caused to pass over a water tank containing water artificially heated, and is thereby warmed, and is thence conducted into a drum, which extends from the tank into the brooding chamber, and through openings in the top of the drum escapes into the chamber. The appellant contends that the principle of the Renwick patent is to keep the feet of the chicken warm by means of heat entering the chamber through the perforated floor; while, on the other hand, the appellant's invention is bottomed upon a principle, asserted to be in accordance with natural law, of keeping the feet of the chicken cool and the head warm, accomplished by introducing the warm air at the top of the brooding chamber, and that, therefore, there is no infringement. It is also insisted that Renwick's invention is anticipated by the patent to Napoleon E. Guerin, No. 3,019, dated March 30, 1843, for an artificial method of raising chickens. Upon the other hand, it is insisted that the appellant's device is a mere evasion; that the floor of appellant's brooder is made of thin board, which absorbs and radiates the heat communicated to it from the water tank beneath; that while in the one the perforations are flush with the floor, and in the other are at the top of the closed drum, the operation and function are the same, because the heated air, ascending through the perforated floor, in large degree naturally rises to the top of the chamber before diffusing; the difference in the two devices being that in the one the warm air is discharged into the brooding chamber at the floor, and passes upward; in the other it is carried by the perforated drum a short distance above the floor before it is discharged into the chamber.

This patent has never passed the ordeal of judicial scrutiny. It is, however, claimed to have received continuous public acquiescence for years. This assertion is predicated upon user and licenses to three rival manufacturers of brooders. There is no evidence in the record of any manufacture or sale or license under this patent until the assignment to the appellee in July, 1892, except that the appellee asserts, upon his information and belief, that over 1,000 of the devices were placed upon the market by the inventor between 1879 and 1892. How many of these were sold is not declared. Mr. Renwick, the inventor who files an affidavit in the case, does not speak to the subject. The appellee avers that since July, 1892, he has "manufactured and sold and placed upon the market" over 5,000 brooders made in conformity with the Renwick patent. There is a manifest distinction between selling and placing upon the market for sale. We are without information of the number actually sold. As the duty devolved upon the appellee to establish the fact of public acquiescence, so it became his duty to exhibit fully to the court the number actually sold, as distinguished from the number placed upon the market. The extent of the sale of a patented invention might characterize the degree of public acquiescence. The mere manufacture and placing upon the market for sale does not indicate acquiescence by the public. But one of the licensees speaks in behalf of

the appellee to the question of license. He declares that he is manufacturing and selling under license from the appellee. But it appears that such license covers not only the patent in suit, but another patent, not exhibited in the record. The license is asserted in mere general terms. The facts connected therewith, and touching the manufacture thereunder, are not clearly stated; so that we are unable to say to what extent we may justly give weight to this license upon the subject of acquiescence. With respect to another one of the three licensees, the Reliable Incubator & Brooder Company, it is disclosed that the company has never manufactured brooders under the license, but under several other patents stated, and that the license in question was taken by the company under threat of litigation, and to avoid the anticipated attending annoyance and expense, and that the license fee paid was but one-half the license fee demanded. We are satisfied that the testimony does not disclose public acquiescence to the extent required. There would seem to have been but trifling operation under this patent from the date of its issue, May, 1879, until it passed into the ownership of the appellee, in 1892. During those 13 years the invention may be said to have lain dormant. It was galvanized into life and activity by the energy and persistence of the appellee. Prior to this suit but three licenses were issued, and those under circumstances not altogether reassuring as concerns the question of public acquiescence. The special presumption of the validity of the patent arising from public acquiescence is not indulged unless such acquiescence exist, when it would not be for the interest of manufacturers and users that it should be yielded, and so exhibiting a genuine conviction of the validity of the patent, based upon investigation, and continuing for such length of time that it may be said the conviction was generally entertained. We are of the opinion that the case exhibited falls far short of the requirement of the law. The validity of the patent is strongly assailed; its infringement is vigorously denied. We deem it improper to express an opinion upon either subject. We think it clear, within the ruling of Standard Elevator Co. v. Crane Elevator Co., 9 U. S. App. 556, 6 C. C. A. 100, and 56 Fed. 718, and of George Ertel Co. v. Stahl (herewith decided) 65 Fed. 517, that the preliminary restraining order should not have been granted. The order appealed from will be reversed.